ERIC A. NYBERG, ESQ. (Bar No. 131105)
CHARLES N. BENDES, ESQ. (Bar No. 70126)
CHRIS D. KUHNER, ESQ. (Bar No. 173291)
KORNFIELD, NYBERG, BENDES & KUHNER, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669

Attorneys for A.F. Evans Company, Inc., Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| In re | Case No. 09-41727 EDJ |
|---|---|
| A.F. EVANS COMPANY, INC., | Chapter 11 |
| Debtor. | STIPULATION REGARDING CASH COLLATERAL AND ADEQUATE PROTECTION |
| | **Hearing Date**<br>Date: March 12, 2009<br>Time: 2:30 PM<br>Ctrm: 215<br>　　　1300 Clay Street<br>　　　Oakland, CA |

　　　　This Stipulation Regarding Cash Collateral and Adequate Protection (this "Stipulation") is dated as of March 6, 2009, and is entered into by and between the debtor in the above-captioned Chapter 11 case, A. F. Evans Company, Inc., a California corporation (the "Debtor"), and City National Bank, a national banking association ("CNB").

### RECITALS

　　　　A.　　On March 5, 2009 ("Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), and since the Petition Date, the Debtor has continued in possession of its property and is managing its business

STIPULATION REGARDING CASH COLLATERAL -1-
AND ADEQUATE PROTECTION

1  as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2  B. The Debtor and CNB are parties to a Second Amended and Restated Credit Agreement dated as of December 29, 2006 (the "Credit Agreement") and promissory notes and related documents executed pursuant thereto and in connection therewith (collectively, together with the Credit Agreement the "Prepetition Loan Documents"), under which CNB extended to the Debtor and to the "Related Obligors" (defined below), "Revolving Credit Loans" and "Project Advance Loans" (as defined in the Credit Agreement, and referred to herein collectively, as the "Loans") in amounts not to exceed $22,500,000 in the aggregate. Debtor's affiliates A. F. Evans Development, Inc., a California corporation, Evans Property Management, Inc., a California corporation and A. F. Evans Senior Communities, Inc., a California corporation, (collectively the "Related Obligors") are co-borrowers under the Credit Agreement and are jointly and severally liable, with the Debtor, for repayment of the Loans.

C. As security for the Loans and the obligations of the Debtor and Related Obligors under the Prepetition Loan Documents, the Debtor granted to CNB a continuing security interest in all of the following property of the Debtor, whether then owned or thereafter acquired (all as more fully described in the Prepetition Loan Documents): inventory; accounts; general intangibles; equipment; interests in patents, copyrights, trade names, trademarks and service marks useful to the Debtor's business; notes, drafts acceptances, instruments, documents of title, policies and certificates of insurance, chattel paper, guaranties and securities; and cash and non-cash proceeds of the foregoing. In addition to the security interests granted by the Debtor in the personal property described above, the Related Obligors also granted to CNB continuing security interests, of equal scope to that granted by the Debtor, to secure their joint and several obligations to CNB. In sum, CNB asserts a blanket lien against all personal property of the Debtor and the Related Obligors and proceeds thereof, excluding only personal property that CNB has expressly authorized for release from the scope of CNB's security interest and further defined in Recital D below as the "Released Collateral", and whether such property or proceeds are received by the Debtor from property owned and disposed of by the Debtor or are property or proceeds of property owned and disposed of by the Related Obligors and paid over to the Debtor by the Related

Obligors Without limiting the generality of the foregoing, CNB's security interests extend to the limited partnership interests that are the subject of the Pending Reliant Sale (defined below) and the Debtor's limited partnership interests that are the subject of the Projected Reliant Sale (defined below), both of which sales are anticipated to close during the period during which this Stipulation is effective. All personal property of the Debtor and the Related Obligors in respect of which CNB holds a valid and perfected security interest pursuant to the Prepetition Loan Documents is referred to herein as the "Collateral."

D. The Debtor and CNB maintain that CNB's security interests in the Collateral are valid, perfected, and unavoidable first priority liens and security interests. To perfect its security interest in the Debtor's interest in the Collateral, CNB filed a Uniform Commercial Code UCC-1 form financing statement with the California Secretary of State's Office on August 9, 2004. Since that date, CNB has released certain collateral from the scope of its security interests, by filing or authorizing the filing of UCC-3 financing statement amendments with the California Secretary of State's Office, as follows (collectively, the "Released Collateral"): (i) in connection with $3,000,000 in bridge loan financing by CP III Evans, LLC, a Colorado limited liability company, in favor of the Debtor, CNB has released or authorized the release from the scope of its collateral the Debtor's partnership, membership, or other ownership interests in (a) Coventry Park, LLC, a California limited liability company, and (b) 1550 Sutter, Inc., a California corporation; and (ii) in connection with the Debtor's sale of two general partnership interests in development projects, CNB has released or authorized the release from the scope of its collateral the Debtor's rights in: (a) Greenery Housing Associates, L.P., a California limited partnership and The Greenery apartment project in Woodland, California, and (b) Westgate Housing Associates, L.P., a California Limited partnership, and the Westgate Gardens apartment project in Fresno, California.

E. In connection with defaults by the Debtor of its obligations to CNB under the Credit Agreement and the Prepetition Loan Documents, the Debtor and CNB entered into a Forbearance Agreement dated as of March 5, 2008. Following the Debtor's default under the Forbearance Agreement, the Debtor and CNB entered into an Amendment to Forbearance Agreement dated as of November 7, 2008. The Forbearance Agreement (as amended, the

STIPULATION REGARDING CASH COLLATERAL -3-
AND ADEQUATE PROTECTION

"Forbearance Agreement"), extended the time for the Debtor's payment of certain of its obligations with respect to the Loans, granted other concessions to the Debtor including the agreement by CNB to share in the disposition proceeds from the Collateral on the terms set forth therein, and included CNB's agreement to forbear from exercising its default remedies on the conditions contained in the Forbearance Agreement. Among other things, the Forbearance Agreement contemplated the Debtor's marketing of and orderly sale of the Debtor's membership interests in limited liability companies, general and limited partnership interests in limited partnerships, and other interests in entities constituting Collateral of CNB. However, the Debtor defaulted in its obligations under the Forbearance Agreement, and CNB's agreement to permit the Debtor to share in the disposition proceeds from sale of Collateral and to forbear from exercising CNB's default remedies terminated no later than January 31, 2009.

F. As of the Petition Date, the Debtor owed CNB approximately $16 million in Loans and other obligations under the Credit Agreement, the Forbearance Agreement, and the Prepetition Loan Documents, not including fees, expenses and other debts or obligations which have accrued and will accrue with respect thereto. The Debtor's obligations to CNB under the Prepetition Loan Documents, including principal and interest due with respect to the Loans, and fees, expenses and other amounts accruing with respect thereto, are referred to herein collectively as the "Obligations." True and correct copies of the Prepetition Loan Documents are retained by the Debtor and CNB and will be available to interested parties upon request.

G. The Debtor has requested that CNB consent to the Debtor's use of Cash Collateral (as defined in section 363 of Bankruptcy Code, and as more fully defined in Section 3 below) on hand as of the Petition Date or subsequently collected in the ordinary course of the Debtor's business.

H. The Debtor has negotiated with CNB regarding the provision of adequate protection for the Debtor's use of Cash Collateral and other Collateral.

I. CNB is willing to consent to the use of Cash Collateral on the terms set forth herein. As more fully set forth below, CNB's consent to the use of Cash Collateral includes provisions for the Debtor's continuation of its ongoing efforts to sell interests in limited liability

companies, partnerships and assets owned by such affiliated entities, and for the Debtor's retention of a portion of the sale proceeds thereof, and in this respect continues on the general framework of CNB's and the Debtor's prepetition cooperative efforts embodied in the Forbearance Agreement.

J. Upon approval by the Court, the terms of this Stipulation shall be binding upon CNB. Pursuant to sections 363(c)(2) and 363(e) of the Bankruptcy Code, the Debtor's use of Cash Collateral authorized hereby is in the best interests of the estates and adequately protects the interests of CNB.

**WHEREFORE**, the parties hereby stipulate and agree as follows:

### AGREEMENT

1. <u>Accuracy of Recitals</u>. The Debtor asserts that the foregoing recitals are true and correct. Nothing in this paragraph shall bind any third party to the accuracy of the recitals.

2. <u>Consent to Use of Cash Collateral</u>. Subject to the terms of this Stipulation and the entry of the order contemplated by Section 4 hereof, CNB consents to the Debtor's use, for the limited period of the "Term" defined in Section 8 hereof and strictly on the terms set forth in this Stipulation, of its Cash Collateral, and the Debtor is hereby authorized to use CNB's Cash Collateral in existence as of the Petition Date, or subsequently collected in the ordinary course of the Debtor's business, in which CNB asserts an interest, for the following purposes:

   (a) To make payments for "Critical Corporate Disbursements" reflected in the in the budget attached hereto as Exhibit "A" and any amendments thereto or extensions thereof approved by CNB (the "Budget"), to the extent incurred in the ordinary course of the Debtor's business, not exceeding in any period for any category of expenditure the amount set forth for such category of expenditure for such period in the Budget; <u>provided however</u> that receipts and disbursements may occur earlier or later than the dates forecast in the Budget. The Debtor represents and warrants to CNB that the Budget does not include, on a net basis during the period of the Budget, disbursements to or for the benefit of any of the Released Collateral.

   (b) Subject to Section 25 hereof, to pay or to reserve for the payment of allowed administrative claims for the fees and expenses of professionals for the Debtor, not

1 exceeding in any period the amounts for such professional fees and expenses for such
2 period set forth in the Budget; <u>provided however</u> that Cash Collateral shall not be used to
3 pay fees or expenses incurred in prosecuting any claims, defenses or actions against CNB,
4 or in otherwise contesting, avoiding or modifying or seeking to contest, avoid or modify
5 any claims, rights and remedies of CNB.

6   3.   Scope of Cash Collateral. To the extent of CNB's security interests, as evidenced
7 by the Prepetition Loan Documents and as permitted by the Bankruptcy Code, CNB's "Cash
8 Collateral" for purposes hereof shall include all (a) cash of the Debtor's estate, wherever located;
9 and (b) cash equivalents, whether in the form of negotiable instruments, documents of title,
10 securities, deposit accounts, or in any other form, which represent income, proceeds, products,
11 rents or profits of the Debtor's interest in Collateral that are now in the possession, custody or
12 control of the Debtor (or of persons in privity with the Debtor), or in which the Debtor will obtain
13 an interest during the pendency of this case, which represent income, proceeds, products, rents, or
14 profits of the Collateral.

15   4.   Cash Collateral Order. Upon entry of an order of the Bankruptcy Court approving
16 this Stipulation, whether on an interim or final basis, the Debtor shall be authorized to use, in the
17 ordinary course of its business, Cash Collateral in accordance with the terms hereof.

18   5.   Budget. During the Term of this Stipulation, CNB and the Debtor may amend or
19 extend the Budget from time to time without approval of the Court.

20   6.   Limitation on Authorization. Nothing in this Stipulation shall authorize the Debtor
21 to use of Cash Collateral generated after the Petition Date from the sale or disposition of assets
22 outside the ordinary course of business of the Debtor. The Debtor is strictly prohibited from using
23 Cash Collateral except as expressly provided herein.

24   7.   Adequate Protection. The following shall serve as adequate protection to CNB for
25 the Debtor's use of Cash Collateral hereunder:

26   (a)   Replacement Liens. Subject to the Carve-Out (defined below), the Debtor hereby
27         grants to CNB, retroactively effective as of the Petition Date, valid and perfected
28         postpetition security interests in, and replacement liens on, all present and future tangible

and intangible personal property of the Debtor and the Debtor's estate, whether now owned or existing or hereafter acquired, created or arising, and all products and proceeds thereof, of the same type and character, and to the same extent and priority, as the prepetition security interests held by CNB in, or the prepetition liens of CNB on, such property, but excluding so-called "avoidance actions" arising under chapter 5 of the Bankruptcy Code (the "Adequate Protection Liens"). CNB's Adequate Protection Liens shall be pari passu in priority with its existing prepetition security interests (to the extent valid and perfected) in the Debtor's property, but subordinate to any valid, enforceable, perfected and unavoidable pre-existing security interest in, and liens on, such property that was senior in priority as of the Petition Date to the security interest held by CNB, and shall have priority over all postpetition liens and encumbrances on such property first arising or first created after the Petition Date; provided, however, that the foregoing Adequate Protection Liens are only granted to the extent that the cash used by the Debtor actually constitutes Cash Collateral in which CNB has a valid, enforceable, perfected and unavoidable security interest and only to the extent that the use by the Debtor of cash in which CNB has such valid, enforceable, perfected and unavoidable security interest results in the diminution of the value of CNB's interest in such Cash Collateral, whether by depreciation, use, sale, loss, decline in market price, or otherwise including such diminution as may arise from the application of the Cash Collateral in accordance with this Stipulation or otherwise (other than diminution due to payments to CNB in accordance with the terms of Stipulation).

(b)     Segregation of CNB Cash Collateral. The Debtor shall segregate in an interest-bearing account, for the benefit of CNB, all proceeds of the postpetition sale or disposition of any Collateral.

(c)     Remittance of Sale Proceeds. Without regard to whether such transactions close before or after the conclusion of the Term, the Debtor shall remit or cause to be remitted to CNB, for application by CNB to the Obligations, in such order and manner as CNB may elect, payment representing a portion of the gross proceeds received by the Debtor from the sales of partnership interests of the Debtor, or from the sale of other assets of

Borrower, as follows:

(i) concurrent with the closing of the transaction, the Debtor shall remit to CNB a sum representing the greater of (a) $2,515,625.00, net of expenses of sale (but not net of any deductions from the contract sale price of $2,875,000.00), or (b) 87.50% of such net proceeds received by the Debtor from the sale of the Debtor's general and limited partnership interests in Bigby Associates, LP and Charter Oaks Associates, LP (collectively, the "Pending Reliant Sale") pursuant to that certain Purchase and Sale Agreement for General Partner Interests between the Debtor and The Reliant Group, a California corporation, dated as of November 25, 2008 (the "Reliant Purchase Agreement);

(ii) concurrent with the closing of the transaction, the Debtor shall remit to CNB a sum representing the greater of (a) $1,225,000.00, net of expenses of sale (but not net of any deductions from the contract sale price of $1,400,000.00), or (b) 87.50% of the net proceeds received by the Debtor from the sale to The Reliant Group of the Debtor's general and limited partnership interests in AFE-Pioneer Associates, LP which the Debtor has projected will close during the Term (the "Projected Reliant Sale");

(iii) the Debtor shall remit to CNB a sum representing 87.50% of the net proceeds of all "Ownership Dispositions" (as defined in the Forbearance Agreement), other than the Pending Reliant Sale and the Projected Reliant Sale, as and when received by the Debtor; and

(iv) the Debtor shall remit to CNB a sum representing 50% of all "Net Asset Sales Proceeds" (as defined in the Forbearance Agreement) as and when received by the Debtor.

(d) <u>Monthly Adequate Protection Payments</u>. During the Term, the Debtor shall remit to CNB on the first business day of each month beginning on March 2, 2009, the sum or $60,000, for application by CNB to the Obligations in such order and manner as CNB may elect.

8. <u>Limited Duration</u>. Unless extended by CNB in writing (including on such other or additional terms as CNB may require, including entry of an order by the Court approving a new Cash Collateral stipulation), CNB's consent to use of Cash Collateral hereunder shall end, and except as provided below in this Section 8, the Debtor shall no longer be authorized pursuant hereto to use CNB's Cash Collateral, on the first to occur of the following (the period from the commencement of this Stipulation to the earliest of the following to occur, the "Term"):

(a) 5:00 p.m. Pacific Standard Time on May 31, 2009; or

(b) with respect to an Event of Default under any of the provisions of Section 9(a) through 9(f), immediately upon the occurrence of such Event of Default; or

(c) with respect to an Event of Default under any of the provisions of Sections 9(g) through 9(s), upon CNB's termination of the Term pursuant to Section 17(a) below.

Notwithstanding the foregoing, any checks issued or other payments initiated by the Debtor prior to conclusion of the Term and in amounts consistent with the Budget and this Stipulation shall be paid and honored in the ordinary course, if, as and when presented.

9. <u>Event of Default</u>. The occurrence of any of the following shall constitute an Event of Default:

(a) The Debtor fails to close the Pending Reliant Sale on or before the March 31, 2009 (or, if extended pursuant to Section 10 below, by April 14, 2009);

(b) The Debtor fails to remit to CNB the proceeds received by the Debtor from the Pending Reliant Sale in the amount required by Section 7(c)(i) above, concurrently with the closing of such sale;

(c) The Debtor fails to close the Projected Reliant Sale by April 30, 2009 (or, if extended pursuant to Section 10 below, by May 14, 2009);

(d) The Debtor fails to remit to CNB the proceeds received by the Debtor from the Projected Reliant Sale in the full amount required by Section 7(c)(ii) above, concurrently with the closing of such sale;

(e) The Debtor fails to remit to CNB the proceeds of "Ownership Dispositions" or "Net Asset Sales Proceeds" as and when received by the Debtor, to the extent required by

Section 7(c)(iii) and Section 7(c)(iv) above;

(f) The Debtor fails timely to remit to CNB the monthly adequate protection payments required by Section 7(d);

(g) The Debtor fails by April 15, 2009, to have entered into a written contract with The Reliant Group for the Projected Reliant Sale at a sale price of no less than $1,400,000.00 (or such lower figure to which CNB in its sole discretion may agree, in writing), in a form consented to by CNB in writing ("Projected Reliant Purchase Agreement"), or if The Reliant Group advises Borrower that it does not intend to consummate the Projected Reliant Sale transaction;

(h) The Debtor does not promptly file a motion pursuant to Bankruptcy Rule 4001(d) seeking an order authorizing use of Cash Collateral of CNB on terms that are consistent with this Stipulation and the Budget, including approval of the Carve-Out;

(i) If the Court only permits interim use of Cash Collateral pursuant to Bankruptcy Rule 4001(d), the Debtor fails to obtain entry of a final order approving this Stipulation before the expiration of thirty (30) days from the Petition Date which authorizes the Debtor to use Cash Collateral of CNB on terms that are consistent with this Stipulation and the Budget (the "Final Order");

(j) If any Interim Order or the Final Order is reversed, modified, or vacated without the consent of CNB;

(k) The Debtor fails to comply with the Budget in any material respect;

(l) The Debtor shall breach any term or provision of this Stipulation in a material way, including without limitation;

(m) The Debtor shall use Cash Collateral for any purpose or in any amount not permitted hereunder;

(n) The Debtor shall commence an action against CNB seeking to invalidate or setoff the debt asserted by CNB or to recover damages from CNB;

(o) If Reliant terminates the Reliant Purchase Agreement in respect of the Pending Reliant Sale, or otherwise advises Borrower that it does not intend to consummate the

STIPULATION REGARDING CASH COLLATERAL    -10-
AND ADEQUATE PROTECTION

1  Pending Reliant Sale transaction;

2  (p) Any postpetition lender to the Debtor shall acquire a postpetition security interest in or lien upon any property of the Debtor having priority over the security interests and liens in such property held by CNB;

5  (q) The bankruptcy case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or a Chapter 11 trustee shall be appointed for the Debtor;

7  (r) The automatic stay is lifted with respect to a material portion of the Collateral of CNB; or

9  (s) An order of the Bankruptcy Court is entered which terminates the authority of the Debtor to conduct business.

11  10. <u>Extension to Sales Dates</u>. Either or both of the dates specified in Sections 9(a) and 9(d) for the occurrence of an Event of Default by reason of the Debtor's failure to close the Pending Reliant Sale or the Projected Reliant Sale, respectively, may be extended to April 14, 2009 or to May 14, 2009, respectively (i.e., by two calendar weeks) if, prior to the applicable date specified, an officer of the Debtor has demonstrated to CNB's reasonable satisfaction, and CNB shall have confirmed the same in writing, that all material conditions precedent to the applicable buyer's obligation to consummate the Pending Reliant Sale or the Projected Reliant Sale have been satisfied, and that there is no material cause to believe that the sale will not be consummated by the extended date for the full sale price, without adjustment or other reduction, as specified in the Reliant Purchase Agreement and the Projected Reliant Purchase Agreement.

21  11. <u>Use of Non-Cash Collateral and Adequate Protection Thereof</u>. The Debtor is also authorized to use the non-cash Collateral of CNB. Subject to the Carve-Out (defined below), as adequate protection for use of such non-cash Collateral, CNB is granted the same Adequate Protection Liens as set forth in Section 7(a), on the same property and in the same priority as described therein, whether now owned or existing or hereafter acquired, created or arising, and all products and proceeds thereof, to the extent such use results in a diminution of the value of CNB's interests in such non-cash Collateral, in the value of CNB's interests in the Collateral, whether by depreciation, use, sale, loss, decline in market price, or otherwise including such diminution as

1  may arise from the application of Collateral (including Cash Collateral) in accordance with this
2  Stipulation or otherwise (other than diminution due to payments to CNB in accordance with the
3  terms of Stipulation); provided that the Adequate Protection Liens are only granted to the extent
4  the property used by the Debtor actually constitutes property in which CNB has a valid,
5  enforceable, perfected and unavoidable security interest and only to the extent that the use by the
6  Debtor of property in which CNB has such valid, enforceable, perfected and unavoidable security
7  interest results in the diminution of the value of CNB's interest in such non-Cash Collateral.

8      12.  CNB Protected by Interim Order. As soon as practicable after the Petition Date,
9  the Debtor shall request entry of an order of the Bankruptcy Court acceptable in form and
10 substance to CNB approving this Stipulation pursuant to Bankruptcy Rule 4001(d). If the
11 Bankruptcy Court only approves this Stipulation on an interim basis ("Interim Order") pending a
12 final hearing, CNB shall nevertheless be entitled to the protections of this Stipulation as adequate
13 protection for the Debtor's interim use of cash and non-Cash Collateral.

14     13.  Administrative Priority Claim. Subject to the Carve-Out (defined below), to the
15 extent that CNB is determined (or, pursuant to Section 23 hereof, is deemed) to hold valid,
16 perfected and unavoidable security interests or liens, if the adequate protection provided herein
17 fails to protect CNB against any postpetition diminution in the value of the Collateral in which
18 CNB asserts an interest, CNB shall be entitled to administrative expense claims pursuant to
19 section 507(a)(1) of the Bankruptcy Code, with priority over any and all other administrative
20 expense of any kind payable or allowed pursuant to any provision of Bankruptcy Code, including,
21 but not limited to, sections 105, 326, 328, 503(c), 507(a) and 507(c) of Bankruptcy Code.

22     14.  Automatic Perfection of Replacement Liens. CNB shall not be required to file any
23 financing statement, notice of lien or similar instrument in any jurisdiction or take any other action
24 in order to perfect the postpetition security interests and liens created hereunder; provided that
25 CNB will only have valid postpetition security interests and liens to the extent that it is determined
26 (or, pursuant to Section 23 hereof, is deemed) to hold valid, enforceable, perfected and
27 unavoidable prepetition security interests and liens that are entitled to adequate protection. CNB
28 may, in its sole discretion, file such financing statements, notices of liens or similar instruments.

1   If CNB chooses to file such financing statements, notices of liens or similar instruments, subject to
2   the proviso in the first sentence of this Section 14, all such documents shall be deemed to have
3   been filed or recorded at the time and on the date of entry of the first Court order approving this
4   Stipulation, whether or not so filed or recorded on such date, and the automatic stay of section 362
5   of Bankruptcy Code shall be deemed vacated and modified to permit the filing of any of the
6   foregoing.

7   15.   Further Assurances.  The Debtor hereby covenants and agrees that it will, from
8   time to time, execute and deliver to CNB any statement, assignment, instrument, document,
9   agreement or other paper and take any other action that CNB may reasonably request to
10  implement the provisions of this Stipulation.

11  16.   Information.  The Debtor shall continue to comply with all reporting obligations to
12  CNB as set forth in Section 7.01 of the Forbearance Agreement, and CNB shall continue to have
13  access to the Debtor's business records, business locations, employees and management to the
14  extent specified in, and subject to the terms of, Section 7.02(a) of the Forbearance Agreement.  In
15  addition, as soon as reasonably practicable after receipt of a written request from CNB, the Debtor
16  shall furnish or cause to be furnished to CNB such other and additional reports and information
17  concerning the Collateral in which CNB asserts an interest that CNB may reasonably request.

18  17.   Remedies on Occurrence of Event of Default.  Upon the occurrence of any Event of
19  Default, CNB shall have the following rights:

20  (a)   Upon the occurrence of any Event of Default under any of the provisions of Section
21  9(a) through 9(f), the Term for the Debtor's use of Cash Collateral shall immediately
22  terminate as provided in Section 8 above.  Upon the occurrence of any Event of Default
23  under any of the provisions of Section 9(g) through 9(s), CNB may send notice to counsel
24  to the Debtor or to any trustee appointed in this case that CNB withdraws its consent to the
25  Debtor's use of Cash Collateral.  Upon the delivery of such notice to counsel to the Debtor
26  or to any trustee appointed in this case, the Term shall immediately terminate as of the
27  close of business on the second (3rd) business day following such notice.

28  (b)   CNB may file a motion (i) to enforce and otherwise implement the terms and

conditions of this Stipulation, and (ii) seeking relief from the automatic stay to enforce its rights and remedies as a secured creditor against the Debtor and the Collateral. CNB may request an emergency hearing on its motion, and the Debtor consents to an order shortening time on such motion limiting notice to not greater than seventy-two (72) hours. The Debtor acknowledges and agrees that CNB will suffer irreparable injury if the terms and conditions of this Stipulation are not implemented strictly in accordance with their terms, and that injunctive relief shall be necessary and appropriate to insure compliance with this Stipulation. The Debtor agrees that 3 days notice to the Notice Parties shall constitute reasonable notice of any emergency hearing on CNB's motion to enforce or implement the terms of this Stipulation or on relief from the automatic stay to enforce its rights as a secured creditor against the Debtor and the Collateral.

18. <u>Remedies in Absence of Events of Default</u>. Nothing contained in this Stipulation shall restrict or limit the right of CNB to seek emergency relief, as may be necessary, pursuant to the applicable provisions of the Bankruptcy Code or other applicable law, prior to the occurrence of an Event of Default. Irrespective of the occurrence of any Event of Default, CNB may move the Court on shortened time for an order terminating the Debtor's right to use Cash Collateral or non cash-Collateral in which CNB asserts an interest for cause, including lack of adequate protection, or on any other ground.

19. <u>Subsequent Use of Cash Collateral</u>. Nothing in this Stipulation shall prohibit the Debtor or any trustee from seeking authority to use Cash Collateral following the termination of the Debtor's right to use Cash Collateral pursuant to the provisions of this Stipulation or prevent CNB from opposing such use.

20. <u>Effectiveness</u>. This Stipulation shall become effective on an interim basis upon entry of the Interim Order. This Stipulation shall become effective on a final basis upon entry of an order by the Court approving the same acceptable in form and substance to CNB.

21. <u>Counterparts</u>. This Stipulation may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto were upon the same instrument. This Stipulation may be executed by the facsimile delivery of signature pages.

22. <u>Continuing Effect; Reservation of Rights</u>. Nothing in this Stipulation amends, modifies, or in any way affects the parties' respective prepetition intercreditor and/or subordination agreements, all of which shall remain in full force and effect. Except as expressly provided herein, CNB reserves all its rights and remedies against the Debtor, the Debtor's assets and third parties, subject to the provisions of the Bankruptcy Code.

23. <u>Limitation on Avoidance Actions</u>. Upon entry of the final order approving this Stipulation, the Debtor will be deemed to have waived any right to challenge, attack, set aside, or avoid the validity, priority, or perfection of the security interests asserted by CNB or to contest the enforceability of the debts owed to such CNB. Notwithstanding the foregoing, however, following entry of a final order approving this Stipulation, other parties in interest (other than any official committee (the "Committee") appointed in this case) (an "Interested Party") shall have 60 days from the date of the Final order within which to investigate and, if authorized by a further order of the Bankruptcy Court, to file any actions or proceedings against CNB to avoid or contest the claims or security interests of CNB. The Committee shall have 90 days from the date of its appointment to investigate and, if authorized by a further order of the Bankruptcy Court, to file any actions or proceedings to avoid or contest the claims or security interests of CNB. Unless an Interested Party or the Committee (a) properly commences any such action or proceeding (including timely obtaining an order of the Bankruptcy Court granting such Interested Party or the Committee, as applicable, standing to file such action or proceeding) within the applicable time period (the "Challenge"), and (b) has obtained from the Bankruptcy Court a ruling in favor of such Interested Party or the Committee, as applicable, in such Challenge, the claims of CNB set forth in the recitals hereto shall be deemed allowed and non-avoidable in full and the security interests asserted by CNB against the Debtor shall be deemed valid, duly perfected and non-avoidable for all purposes of the Debtor's bankruptcy case and in any subsequent chapter 7 case. If any Challenge is timely commenced, the waivers and admissions contained herein shall nonetheless remain binding and preclusive except to the extent that such acknowledgments and agreements were expressly challenged in such Challenge.

24. <u>Enforceability</u>. The terms and conditions of this Stipulation have been negotiated

1 by the parties at arms' length and in good faith and are fair and reasonable under the
2 circumstances, and this Stipulation shall be enforceable against the parties in accordance with its
3 terms. This Stipulation shall be binding upon and shall inure to the benefit of the parties hereto
4 and their successors in interest, including any successor collateral agent and any trustee appointed
5 for the Debtor's estates, and including any trustee appointed after any conversion of the Debtor's
6 case to a case under chapter 7 of the Bankruptcy Code.

25.  Carve-Out.  CNB subordinates its prepetition and postpetition security interests and liens, and its prepetition and postpetition claims and priority claims (including any superpriority claims), to the payment of the following expenses, up to the maximum amount of $30,000 (collectively, the "Carve-Out"):

    (a)    Statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930;

    (b)    Fees payable to the Clerk of the Court; and

    (c)    The fees and expenses of any chapter 7 trustee appointed in this case and such trustee's professionals.

The Carve-Out is separate from and in addition to any retainers paid to any of the Professionals prior to the Petition Date. Notwithstanding anything to the contrary herein, the Carve-Out shall not include any fees or expenses incurred in connection with or in support of:

    (a)    A challenge to the validity, priority, perfection or enforceability of the obligations owed to CNB or an objection or attempt to disallow or subordinate any of the claims, security interests or liens of CNB;

    (b)    Any action or assertion of any claims or causes of action against CNB, its officers, directors, employees, agents, attorneys, affiliates, assigns or successors, including without limitation any attempt to assert an avoiding action against CNB; or

    (c)    Any act which has the effect of materially modifying or compromising the rights and remedies of CNB.

26.  Better Treatment.  Notwithstanding anything to the contrary contained herein, in the event a secured party is granted or obtains better adequate protection than is provided to CNB under the Stipulation, the Debtor agrees to provide like or equivalent adequate protection to CNB

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

1 to the maximum extent possible.

2     27.   Signatures. This Stipulation may be executed in counterparts. Facsimile signatures are acceptable. The attorney for any party may sign on behalf of that party. Each attorney signing for its client represents it has authority to bind its client to this Stipulation and each party shall be deemed to have authorized its attorney to sign on its behalf.

[signature page follows]

1
2   Dated: March ___, 2009                    Kornfield, Nyberg, Bendes & Kuhner, P.C.
3
4                                              By: Eric A. Nyberg /s/
                                                  (Bar No. 131105)
5                                                 Attorneys for Debtor
6
7   Dated: March ___, 2009                    Pepler Mastromonaco LLP
8
9                                              By: Frank T. Pepler /s/
                                                  (Bar No. 100070)
10                                                Attorneys for City National Bank
11
12
13                              [signatures continue on following page]
14

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

STIPULATION REGARDING CASH COLLATERAL   -18-
AND ADEQUATE PROTECTION

1
2  Dated: March ___, 2009                    A.F. Evans Company, Inc.
3
4                                            By:_____
                                                Name: _____
5                                               Title: _____
6
7  Dated: March ___, 2009                    City National Bank
8
9                                            By:_____
                                                Name: _____
10                                              Title: _____
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

STIPULATION REGARDING CASH COLLATERAL    -19-
AND ADEQUATE PROTECTION