1  Maxim B. Litvak (CA Bar No. 215852)
   Pamela E. Singer (CA Bar No. 224758)
2  PACHULSKI STANG ZIEHL & JONES LLP
   150 California Street, 15th Floor
3  San Francisco, California 94111-4500
   Telephone: 415/263-7000
4  Facsimile: 415/263-7010
   E-mail:  mlitvak@pszjlaw.com
5           psinger@pszjlaw.com

6  Attorneys for the Official Committee of Unsecured
   Creditors

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                          **OAKLAND DIVISION**

11  In re:                              |  Case No.: 09-41727-EDJ

12  A.F. Evans Company, Inc.,           |  Chapter 11

13                    Debtor.           |  **OPPOSITION OF OFFICIAL
                                           COMMITTEE OF UNSECURED
14                                         CREDITORS TO MOTION OF CITY
                                           NATIONAL BANK FOR ORDER
15                                         REQUIRING DEBTOR TO REMIT
                                           SALE PROCEEDS OF COLLATERAL**
16
                                        **Hearing:**
17
                                        Date:  July 2, 2009
18                                      Time:  2:30 p.m.
                                        Place: Courtroom 215
19                                             1300 Clay Street, Suite 300
                                               Oakland, CA 94612
20                                      Judge: Honorable Edward D. Jellen

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................................................ 1

II.    KNOWN AND UNDISPUTED FACTS ..................................................................... 3

III.   UNKNOWN FACTS ................................................................................................... 4

IV.    ARGUMENT ............................................................................................................... 5

       A.    The Filing of the Terminating Amendments was Within the Scope of First
             American's Authority and is Binding on CNB ................................................ 5

       B.    CNB is Bound by Any Mistakes that May Have Been Made by Its Agent,
             First American, Acting Within the Scope of Its Authority .............................. 6

       C.    The Escrow Agent Cases Cited by CNB Substantiate the Point that an Agent's
             Mistakes Bind the Principal ........................................................................... 8

       D.    The Terminating Amendments (Even if They Contained Mistakes) were Effective
             in Terminating CNB's Security Interests Against the Assets of this Estate .............. 10

       E.    The Committee Should Have an Opportunity to Conduct Discovery and Litigate
             the Validity, Priority or Extent of CNB's Asserted Liens Through an Adversary
             Proceeding .................................................................................................... 13

V.     CONCLUSION .......................................................................................................... 14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Crestar Bank v. Neal (In re Kitchen Equip. Co. of Virginia),*
960 F.2d 1242 (4th Cir. 1992) ...................................................................................................... 11

*Goddard v. Metropolitan Trust Co. of California,*
82 F.2d 902 (9th Cir. 1936) ........................................................................................................... 7

*Greenzweight v. Title Guarantee & Trust Co.,*
1 Cal. 2d 577 (1934) .................................................................................................................. 8, 9

*In re Hampton,*
2001 WL 1860362 (Bankr. M.D. Ga. 2001).............................................................................. 12

*Koehring Company v. Nolden (In re Pacific Trencher & Equip., Inc.),*
735 F.2d 362 (9th Cir. 1984) ..................................................................................... 2, 11, 12, 13

*Montgomery v. Bank of American Nat'l Trust & Savings Ass'n,*
85 Cal. App. 2d 559 (Cal Ct. App. 1948) ................................................................................ 9, 10

*Morrow Crane Co. v. Affiliated FM Ins. Co.,*
885 F.2d 612 (9th Cir. 1989) ......................................................................................................... 7

*Peoples Bank of Kentucky, Inc. v. US Bank (In re SJ Cox Enters., Inc.),*
2009 WL 939573 *4 (Bankr. E.D. Ky. 2009).............................................................................. 11

*Silvernail Mirror & Glass, Inc.,*
142 B.R. 987, 989 (Bankr. M.D. Fla. 1992) .............................................................................. 12

*Smith v. Deutsch,*
89 Cal. App. 2d 419, 425 (Cal. Ct. App. 1949) ........................................................................... 8

*Todd v. Bestermark,*
145 Cal. App. 3d 374 (1956) ......................................................................................................... 9

*Watts v. Mohr,*
86 Cal. App. 2d 256 (1948) ......................................................................................................... 10

**Other Authorities**

Bankruptcy Rule 7001(2)........................................................................................................... 2, 14

CAL. CIV. CODE § 2295................................................................................................................... 5

CAL. CIV. CODE § 2330................................................................................................................... 6

CAL. COMM. CODE § 9402(8).................................................................................................... 11, 12

CAL. COMM. CODE § 9506 ......................................................................................................... 11, 12

CAL. COMM. CODE § 9625 .............................................................................................................. 6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

ii

OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS; MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

1    The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned

2    debtor and debtor in possession herein (the "Debtor") hereby submits its opposition (the

3    "Opposition") to the *Motion of City National Bank for Order Requiring Debtor to Remit Sale*

4    *Proceeds of Collateral* (the "Motion"), filed on June 12, 2009 [Docket No. 267]. By the Motion,

5    City National Bank ("CNB") seeks immediate distribution of 87.5% of the proceeds from the sale of

6    the Debtor's interests in AFE-Pioneer Associates, LP, if and when received. (The Committee is

7    informed that such sale has not yet closed and it is unclear when such sale will close.) In support of

8    this Opposition, the Committee represents as follows:

## I.

## INTRODUCTION

11    CNB is not entitled to immediate distribution of any sale proceeds in this case and the

12    Motion should be denied because, by all appearances, CNB's asserted liens against the Debtor's

13    assets were terminated prepetition. CNB's position to the contrary can be reduced to a single faulty

14    premise: that CNB's delivery of instructions to First American Title Insurance Company ("First

15    American"), as escrow agent, was not "authorization" to file amendments terminating CNB's

16    underlying financing statement against the Debtor. Of course, CNB did not specifically "authorize"

17    the filing of any terminating amendments, but somewhere along the line a mistake was made in the

18    execution of these filings (either by CNB or its *de facto* agent, First American) and that mistake is

19    now binding on CNB.

20    CNB admits that First American was its agent for the purpose of filing Form UCC-3

21    amendments releasing certain collateral, and nothing more. CNB's narrow construction of

22    "authority," however, is belied by the actual instructions delivered to First American which

23    "authorize[d] the filing of appropriate amendments" to CNB's original financing statement. Even

24    assuming that CNB delivered the appropriate UCC-3 amendments to First American (a fact that is

25    not entirely clarified by CNB's submissions in support of the Motion), First American was

26    authorized to make the "appropriate" filings to amend CNB's underlying financing statement.

27    Acting within the scope of that authority, First American apparently filed the two UCC-3

28    amendments that CNB intended to file, but there was one problem: the termination boxes were

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1

OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

1     checked. The California Secretary of State (the "Secretary") then recorded CNB's underlying

2     original financing statement as having been terminated. If First American made the mistake of

3     checking the termination boxes, then it may be liable to CNB for damages, but that does not mean

4     that the filings at issue were not "authorized." To the contrary, First American was expressly

5     authorized to file the "appropriate amendments" and it did so by filing the UCC-3 amendments that

6     CNB intended, but such filings contained a critical error that is now binding on CNB.

7         It is black letter law that an agent's actions (while acting within the scope of its authority)

8     bind the principal. There is no exception for an agent's mistakes. In fact, any such an exception

9     would quickly swallow the rule because the principal would always take the position after the fact

10    (once something goes wrong) that the agent's action was a mistake and, therefore, not "authorized."

11    That is not the law. The principal's remedy is to pursue the agent for the mistake. If First American

12    made the mistake at issue here, CNB may have a claim against First American, but CNB's asserted

13    liens against the assets of this estate have been terminated.

14         CNB's alternative argument that the filings at issue were not "seriously misleading" are

15    similarly unavailing. There is Ninth Circuit precedent directly on point, and which continues to be

16    binding precedent, that checking the termination box in a financing statement amendment by

17    mistake, as happened here, is "seriously misleading" and therefore terminates the lender's security

18    interest. *See Koehring Company v. Nolden (In re Pacific Trencher & Equip., Inc.)*, 735 F.2d 362

19    (9th Cir. 1984).

20         Finally, it bears mention that the Committee does not yet know who filed the termination

21    statements at issue or all the circumstances surrounding such filings. The Committee also has not

22    had an opportunity to conduct discovery on these points. Hence, to the extent that the Court is not

23    inclined to deny the Motion based on the legal arguments made herein and the facts as currently

24    presented, the Committee urges the Court to deny the Motion without prejudice pending the filing of

25    an adversary proceeding by the Committee to determine the validity, priority or extent of CNB's

26    liens under Bankruptcy Rule 7001(2).

27    ///

28    ///

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

2

OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

**II.**

## KNOWN AND UNDISPUTED FACTS

On May 5, 2009, the Committee filed the *Objection of Official Committee of Unsecured Creditors to Distribution of Sale Proceeds to City National Bank* [Docket No. 133] (the "Objection"). In the Objection, the Committee asserted that, based on the evidence available to date, CNB's lien was terminated and that therefore the proceeds of the Sale should not be remitted to CNB. The Objection and the Declaration of Maxim B. Litvak filed in support thereof (the "Litvak Declaration") are incorporated herein by this reference.

CNB has not challenged the factual assertions in the Objection or the Litvak Declaration, which are summarized below:

1.     On August 9, 2004, CNB filed a UCC financing statement (the "Original Financing Statement") with the Secretary in order to perfect its security interest in "All Inventory, Accounts (Fees Receivable), General Intangibles, Equipment and Chattel Paper" owned by the Debtor. A copy of the Original Financing Statement is attached to the Litvak Declaration as Exhibit A.

2.     In January 2009, the Debtor sold its general partnership interests in Westgate Housing Associates L.P. ("Westgate") and Greenery Housing Associates, L.P. ("Greenery"). On January 8, 2009, Rick Bell, an officer of the Debtor, sent an email to CNB attaching proposed releases of CNB's security interests in Westgate and Greenery and escrow instructions with respect to the contemplated sales of such assets. A copy of this email is attached to the Litvak Declaration as Exhibit B.

3.     Subsequently, CNB delivered instructions to First American (these documents were also addressed to the Debtor) confirming that CNB would release its security interests in Westgate and Greenery upon payment of the purchase price from the pending sales of these assets. These instructions are attached to the Litvak Declaration as Exhibit C. As part of such instructions to First American, CNB expressly "*authorize[d] the filing of appropriate amendments*" to the Original Financing Statement (emphasis added). CNB has taken the position that UCC-3 amendments, in the form attached to the Litvak Declaration as Exhibit D, were also provided by CNB to First American.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  These forms do not have the termination boxes checked. Instead, they only have the deletion of
2  collateral boxes checked.

3      4.    On January 28, 2009, two UCC-3 amendments (the "Terminating Amendments")
4  referencing the Original Financing Statement were filed with the Secretary. The Terminating
5  Amendments were identical to the forms previously approved by CNB, but with one glaring
6  difference. Both Terminating Amendments had the termination box checked, which was followed
7  by standard language stating that: "TERMINATION: Effectiveness of the Financing Statement
8  identified above is terminated with respect to security interest(s) of the Secured Party authorizing
9  this Termination Statement." A copy of both Terminating Amendments is attached to the Litvak
10  Declaration as Exhibit E.

11      5.    The Terminating Amendments were duly recorded by the Secretary as having
12  terminated the Original Financing Statement. A copy of pertinent excerpts of the summary of UCC
13  filings recorded by the Secretary against the Debtor is attached to the Litvak Declaration as Exhibit
14  F.

15      6.    On February 6, 2009, CNB filed two additional UCC-3 amendments (the "Correction
16  Statements") stating that the Terminating Amendments were filed without CNB's authority and that
17  CNB had only authorized the release of its security interest in the Debtor's interest in the Westgate
18  and Greenery general partnership interests. Copies of the Correction Statements are attached to the
19  Litvak Declaration as Exhibit G.

20                       **III.**

21                  **UNKNOWN FACTS**

22      The key fact that remains unknown is who checked the termination boxes on the Terminating
23  Amendments.

24      The Motion and the *Declaration of Jerry McDermott* filed in support thereof (the
25  "McDermott Declaration") do not unequivocally state that the UCC-3 amendments delivered by
26  CNB to First American were free of any markings in the termination boxes.

27      Mr. McDermott testifies about delivering the executed instructions and UCC-3 amendments
28  (without the termination boxes checked) to one of three shared administrative assistants who support

OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

Case3:09-cv-03817-MMC Document3-13 Filed: 06/25/09 Entered: 06/25/09
17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    the CNB Special Assets group. McDermott Declaration at ¶10. Mr. McDermott also testifies that he

2    instructed the administrative assistant to deliver the materials to First American and the Debtor.

3    McDermott Declaration at ¶11. However, Mr. McDermott does not recall specifically which

4    administrative assistant handled these materials and neither do the administrative assistants

5    themselves. McDermott Declaration at ¶11. It is not clear whether CNB has file copies of what was

6    actually sent to First American and the Debtor.

7          The Committee has yet to obtain copies of the documents actually received by First

8    American and the Debtor from CNB, or copies of the documents submitted by First American to the

9    Secretary for filing. The Committee is prepared to conduct discovery on these points, if that

10    becomes necessary.

**IV.**

**ARGUMENT**

**A. The Filing of the Terminating Amendments was Within the Scope of First American's Authority and is Binding on CNB**

15          It is undisputed that CNB authorized First American to file "appropriate amendments" to

16    CNB's Original Financing Statement. First American was therefore CNB's agent for purposes of

17    effectuating such UCC-3 filings and CNB admits as much in the Motion. *See* CAL. CIV. CODE §

18    2295 ("An agent is one who represents another, called the principal, in dealings with third persons.")

19          CNB apparently delivered forms of the "appropriate amendments" (*i.e.*, UCC-3 amendments)

20    that it wanted First American to file (as agent) on behalf of CNB. First American apparently filed

21    these same forms with the Secretary, but with one glaring error: the termination boxes were

22    checked.

23          CNB would now have the Court adopt an unreasonably narrow construction of the scope of

24    First American's authority. Specifically, CNB seeks to limit First American's authority not to filing

25    "appropriate amendments," but just to the filing of those specific documents that were purportedly

26    delivered by CNB to First American, without the possibility of mistake or alteration. CNB's

27    instructions to First American, however, were not so limited. They expressly authorized the filing of

28

5

OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

1  "appropriate amendments," which is what First American did, except that a mistake was apparently
2  made in checking the termination boxes in such amendments.

3      A principal is bound by the acts of his agent while acting within the scope of his authority.
4  *See* CAL. CIV. CODE § 2330 ("An agent represents his principal for all purposes within the scope of
5  his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent
6  from transactions within such limit, if they had been entered into on his own account, accrue to the
7  principal."). Notably, under the California Commercial Code, a termination statement is merely an
8  amendment of a financing statement (*i.e.*, a UCC-3 amendment) -- it is not some additional or
9  separate document. *See* CAL. COMM. CODE §9102(79).

10      Here, CNB expressly authorized the filing of "appropriate amendments" to its Original
11  Financing Statement and First American was acting consistent with that authority when it actually
12  filed such amendments. CNB is therefore bound by the filing of the Terminating Amendments (even
13  if a mistake was made in checking the termination boxes therein).

14  **B.    CNB is Bound by Any Mistakes that May Have Been Made by Its
15      Agent, First American, Acting Within the Scope of Its Authority**

16      CNB argues that it is not bound by any mistakes that may have been made by First American
17  because, by definition, such mistakes were not "authorized." Of course, mistakes are never
18  expressly authorized, but they do happen and California law contemplates that there may be liability
19  to the extent they occur. (For instance, CNB may have claims arising under section 9625 of the
20  California Commercial Code.) In effect, CNB is asking the Court to read the possibility of error
21  completely out of California law. If CNB were to prevail, the fundamental premise that a principal
22  is bound by the acts of its agent would be quickly swallowed up by arguments that an agent's
23  mistakes were never authorized in the first place, a form of "no harm, no foul" rule that would fully
24  exonerate the principal of its agent's misconduct in every instance.

25      The Ninth Circuit established long ago that an agent's mistake or disregard of the principal's
26  instructions does not take the agent's actions outside the scope of the agent's authority and,
27  therefore, binds the principal. (CNB attempts to distinguish these cases, but as set forth below, they
28  are clearly relevant and directly applicable here.) In *Goddard v. Metropolitan Trust Co. of*

1  *California,* 82 F.2d 902 (9th Cir. 1936), a principal authorized an agent to make a loan to a third

2  person and to acquire a security interest in collateral in exchange for the loan. The agent made the

3  loan but failed to acquire the security interest. The principal then sued the agent for conversion for

4  giving away the principal's money without authorization. The court held that while the agent clearly

5  violated the principal's instructions, he was still acting within the scope of his agency, and,

6  therefore, could not be found liable for conversion. *Id.* at 904.

7  Here, like the agent in *Goddard*, First American (to the extent that it is the responsible party

8  for the Terminating Amendments at issue) may have misunderstood CNB's intentions, but it was

9  still acting within the scope of CNB's authorization to file the "appropriate amendments" of the

10  Original Financing Statement. As the Ninth Circuit stated in *Goddard*, "[t]he complaint shows, not a

11  complete departure from the agent's authority, but a mere violation of the principal's instructions

12  regarding the manner in which the authority should be exercised." *Goddard,* 82 F.2d at 904. That

13  may be precisely what happened here. First American was supposed to file UCC-3 amendments to

14  the Original Financing Statement releasing certain specified collateral in accordance with CNB's

15  direction, but First American may have made the mistake of filing these same documents with the

16  termination boxes checked. The Terminating Amendments, however, were identical in every respect

17  to the amendments that CNB wanted First American to file, but with the termination boxes checked.

18  Under *Goddard,* this mistake does not render the action unauthorized.

19  Other cases bolster the point. For example, in *Morrow Crane Co. v. Affiliated FM Ins. Co.,*

20  885 F.2d 612 (9th Cir. 1989), an agent violated his principal's instructions by contracting to have

21  cranes shipped above deck, instead of below deck. The court held that although the agent had

22  botched the job, the principal nonetheless remained bound by the agent's contract with the shipper

23  because the agent entered into the contract while performing the assigned task of arranging

24  shipment. *Id.* at 615. The same is true here. Even though First American may have checked the

25  wrong box, CNB remains bound because First American was performing its assigned task of

26  amending the Original Financing Statement.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   Finally, in *Smith v. Deutsch,* 89 Cal. App. 2d 419, 425 (Cal. Ct. App. 1949), the court stated:

2       It is not necessary that a specific act, or failure to act, be authorized as
        such by the principal to bring it within the scope of the agent's
3       authority. *It is within the scope of his authority if it is done while the
        agent is engaged in the transaction of business which has been*
4       *assigned to him for attention by his principal* . . . . (emphasis added).

5   Here, First American may have made a mistake while "engage[d] in the transaction of business

6   which [had] been assigned" by CNB, which was to amend the Original Financing Statement, but

7   CNB remains bound and the Terminating Amendments were effective.

8   **C.     The Escrow Agent Cases Cited by CNB Substantiate
            the Point that an Agent's Mistakes Bind the Principal**

9

10      CNB takes the position that escrow agents are somehow held to a higher standard than other

11  agents in terms of determining the scope of their authority. However, the cases cited by CNB do not

12  support this argument and instead reinforce the general rule that an agent's mistakes bind the

13  principal. (CNB also ignores the fact that a strict construction of First American's authority would

14  not help CNB here given that the escrow instructions at issue specifically authorized First American

15  to file the "appropriate amendments" and did not limit First American's authority to any specific set

16  of documents.)

17      As for the cases cited by CNB, in *Greenzweight v. Title Guarantee & Trust Co.*, 1 Cal. 2d

18  577 (1934), a case dating back to the Great Depression, the plaintiff agreed to release its lien in real

19  property in exchange for having its loan paid off upon the sale of the property. When the escrow

20  company received a check from the buyer, it recorded a deed that released the lender's security

21  interest. However, before the check cleared and the escrow company could transfer the funds to the

22  lender, the regulators closed the escrow company and presumably seized all of its money.

23      The secured lender sought declaratory relief that it continued to retain a valid security interest

24  against the real property on the grounds that the escrow company had violated its instructions by

25  accepting the check, instead of demanding cash. The court ruled that accepting a check did not

26  violate the principal's instructions. In any event, the court added:

27      [T]he escrow holder became the agent of the plaintiff as to such money
        and *any impropriety in its subsequent conduct with regard thereto
28      must be borne by plaintiff* and not by the defendants. In other words, if

8

OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

Case3:09-cv-03817-MMC Document3-13 Filed12/31/09 Page11 of 21
Case:09-41727-EDJ Doc# 180 Filed: 06/25/09 Entered: 06/25/09
17

1

2

3

> the escrow holder violated its duty in so "redepositing" the proceeds of
> the check with the Bank of America, or in permitting the credit
> therefore to stand until such time as conditions compelled its cessation
> of business, it did so *as the agent of the plaintiff who, as against
> innocent third parties, should now bear the loss.*

4    *Id.* at 582 (emphasis added). Thus, even if accepting the check violated the secured lender's

5    instructions, the secured lender was bound by the agent's conduct and the lien release was valid

6    (even though it was not authorized). This case supports the Committee's argument that when an

7    agent makes a mistake or disobeys instructions, while acting with the scope of the duties assigned to

8    it by the principal, the principal is bound by those mistakes.

9    Similarly, *Todd v. Bestermark,* 145 Cal. App. 3d 374 (1956), cited by CNB, reinforces the

10   point that an agent's actions bind the principal. In *Todd*, the buyers deposited $6,000 with an escrow

11   company with directions to transfer the money to the seller when the title insurance was obtained.

12   Before the title insurance was obtained, the president of the escrow company embezzled the $6,000

13   and the escrow company recorded both the grant deed transferring title to the buyer and the

14   reconveyance deed releasing the security interest. Therefore, the seller lost the property without

15   consideration and the secured lender lost its security interest without any payment of the loan. The

16   seller sued the buyer to quiet title and the secured lender sued the seller and the buyer for a

17   declaration that the property was still subject to the lien.

18   The court held that the escrow company was the buyer's agent and the buyer was the

19   principal. Therefore, although the buyer had not authorized the escrow company to embezzle the

20   money, transfer the deed or release the security interest, the buyer was bound by the escrow agent's

21   misconduct and would bear the loss of the agent's mistake. Similarly in the instant case, CNB may

22   have claims against First American if it turns out that First American mistakenly checked the

23   termination boxes on the Terminating Amendments, but in any event, CNB is bound by the filing of

24   the Terminating Amendments.

25   CNB also cites *Montgomery v. Bank of American Nat'l Trust & Savings Ass'n*, 85 Cal. App.

26   2d 559 (Cal. Ct. App. 1948), to support its argument that the Terminating Amendments in this case

27   were "null and void." In *Montgomery*, an escrow company changed the property description on a

28   grant deed. The seller of the property -- who only meant to sell a portion of a lot -- sued the escrow

9

OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    company after realizing that in fact the entire lot had been conveyed to the buyers. The court held

2    that the escrow company was not liable for damages because the deed, conveyed without authority,

3    was null and void and the court directed the seller to sue the buyer to quiet title.

4         The court in *Montgomery*, however, made it clear that: "*If the subject of this action were*

5    *personal property* defendant would be answerable in damages." *Id.* at 564 (emphasis added). Thus,

6    *Montgomery's* holding -- that deeds conveyed by mistake are null and void -- is limited to real

7    property collateral. When the matter involves personal property (as is the case here), the escrow

8    agent's mistaken actions are not void and the principal has a cause of action in damages against such

9    agent.

10        CNB also misconstrues the decision in *Watts v. Mohr*, 86 Cal. App. 2d 256 (1948). This

11   decision does not stand for the proposition that the principal is not bound when an escrow agent does

12   not comply with its instructions "to the letter." In *Watts*, a buyer of real property sued the seller for

13   specific performance after the seller cancelled the escrow agreement pursuant to its terms. The

14   buyer argued that enough of the terms of the escrow agreement had been fulfilled to justify specific

15   performance. In this context, the court responded that "[c]ompliance [with an escrow agreement]

16   must be full and to the letter." *Id.* at 262. Because the buyer had not met each and every term of the

17   escrow agreement "to the letter," the seller's obligation to sell had not been triggered and specific

18   performance could not be ordered. *Watts* does not suggest that an escrow agent's mistakes are not

19   binding.

20        Finally, CNB relies on an article written by First American for the proposition that mistaken

21   termination filings have no consequence. This article is obviously self-serving and is simply

22   inconsistent with applicable law, as cited herein.

23   **D.    The Terminating Amendments (Even if They Contained Mistakes) were**
          **Effective in Terminating CNB's Security Interests Against the Assets of this Estate**

24

25        Whether the termination boxes in the Terminating Amendments were mistakenly checked by

26   First American or CNB, the filing of the Terminating Amendments was effective and binding on

27   CNB in terminating CNB's liens against the assets of this estate as a matter of Ninth Circuit law.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

10

OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

Case:09-41727-RLE  Doc# 180    Filed: 06/25/09    Entered: 06/25/09
17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    The decision in *Koehring Company v. Nolden (In re Pacific Trencher & Equip., Inc.)*, 735

2    F.2d 362 (9th Cir. 1984), is directly on point.  In *Pacific Trencher*, the Ninth Circuit held that

3    mistakenly checking the termination box in an amendment to a financing statement terminated the

4    secured lender's security interest.  The case involved a secured lender that agreed to partially release

5    its security interest in certain of the debtor's assets.  It inadvertently checked the termination box and

6    listed the released collateral.  Later discovering its mistake, the lender filed a new financing

7    statement.  When the debtor filed bankruptcy, the secured lender filed an adversary proceeding

8    seeking to reform its financing statement to provide that it had not been terminated.  The Ninth

9    Circuit ruled that reformation did not apply.

10   The Ninth Circuit also rejected the secured lender's argument that checking the termination

11   box was not "seriously misleading."  In making this argument, the secured lender relied on section

12   9402(8) of the old California Commercial Code (section 9506 of the new California Commercial

13   Code) which provided that "[a] financing statement substantially complying with the requirements of

14   this section is effective even though it contains minor errors which are not seriously misleading."

15   In support of its argument that mistakenly checking the termination box was not "seriously

16   misleading," the secured lender pointed out that no one had been harmed.  The Ninth Circuit rejected

17   these arguments and held that mistakenly checking the termination box, but also listing released

18   collateral, was "seriously misleading" and that the statement could not be treated as an effective

19   financing statement, but instead had to be treated as terminating the lenders' security interest.

20   The Ninth Circuit added:

21       It is not determinative that no actual creditor was misled.  It matters
         that a potential creditor could have been misled.  Consequently, it is
22       the conclusion of this court that the error resulting in the termination of
         the financing statement was seriously misleading viewed from the
23       standpoint of a potential creditor reviewing the records.

24   *Id.*, 735 F.2d at 364 (quotations and citations omitted).  Other courts agree with the Ninth Circuit's

25   approach in *Pacific Trencher*.  *See Crestar Bank v. Neal (In re Kitchen Equip. Co. of Virginia)*, 960

26   F.2d 1242 (4th Cir. 1992) (lender checked termination box, but then listed collateral to be released;

27   held:  financing statement was terminated); *Peoples Bank of Kentucky, Inc. v. US Bank (In re SJ Cox*

28   *Enters., Inc.)*, 2009 WL 939573 *4 (Bankr. E.D. Ky. 2009) ("[t]he filing of a termination statement

11

1    cannot be considered a minor error."); *In re Hampton*, 2001 WL 1860362 (Bankr. M.D. Ga. 2001)

2    (creditor was unsecured where it mistakenly terminated financing statement); *In re Silvernail Mirror*

3    *& Glass, Inc.,* 142 B.R. 987, 989 (Bankr. M.D. Fla. 1992) (court could not apply equitable principles

4    to reinstate creditor's lien against debtor's assets where creditor mistakenly filed a termination

5    statement terminating its financing statement).

6          Perhaps recognizing the significance of *Pacific Trencher*, CNB suggests that the decision has

7    been abrogated by subsequent revisions to the California Commercial Code. In fact, section 9402(8)

8    of the old California Commercial Code, discussed in *Pacific Trencher*, has been carried over into

9    section 9506 of the new California Commercial Code almost verbatim. Therefore, the statutory

10   basis for *Pacific Trencher* has remained intact and the decision remains good law.

11         CNB also tries to distinguish *Pacific Trencher* on the basis that both the termination and

12   deletion boxes were checked in the Terminating Amendments filed in this case, while only the

13   termination box was checked in *Pacific Trencher*. CNB argues that because the "release" (in fact, it

14   was a "deletion") box was checked on the Terminating Amendments and collateral was listed,

15   parties would realize that the Terminating Amendments were only partially releasing CNB's security

16   interest in the Debtor's assets and the mistake of checking the termination box was not "seriously

17   misleading." In contrast, in *Pacific Trencher*, only the termination box was checked and the

18   "release" box was *not* checked (but specific released collateral was nonetheless listed). Therefore,

19   CNB argues that the termination statements in *Pacific Trencher* were more misleading than the

20   Terminating Amendments in this case.

21         CNB's position does not make sense. The facts in this case and *Pacific Trencher* are nearly

22   identical. And to the extent they differ, the Terminating Amendments in this case are *even more*

23   misleading than those filed in *Pacific Trencher*.

24         First, the striking similarities. In both *Pacific Trencher* and this case, the termination box is

25   checked and the statements provide that the secured lender's financing statement is "terminated."

26   *Compare* the Terminating Amendments, Litvak Declaration at Exhibit E ("TERMINATION:

27   Effectiveness of the Financing Statement identified above is terminated with respect to security

28   interest(s) of the Secured Party authorizing this Termination Statement."), with *Pacific Trencher*,

OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   735 F.2d at 364 ("TERMINATION – The Secured Party certifies that the Secured Party no longer

2   claims a security interest under the Financing Statement bearing the file number shown above.").

3       In both *Pacific Trencher* and this case, the Secretary of State listed the security interest as

4   terminated. *Compare* Secretary of State Summary, Litvak Declaration at Exhibit F, with *Pacific*

5   *Trencher*, 735 F.2d at 363.

6       Finally, in both cases, the secured lender attempted to fix the problem by filing a corrective

7   statement. Compare Correction Statements, Litvak Declaration at Exhibit G; with *Pacific Trencher*,

8   735 F.2d at 363, n. 1.

9       Despite these close similarities, the Terminating Amendments in this case are even more

10  misleading than in *Pacific Trencher* because in addition to expressly stating that CNB's financing

11  statement was terminated, the box for "deleted collateral" was also checked and in the list of

12  "deleted collateral," there is no indication that CNB is retaining an interest in any collateral.

13      In its final attempt to get out from under the holding in *Pacific Trencher*, CNB argues that

14  the world was put on inquiry notice of the "possible existence" of a lien by CNB and therefore

15  checking the termination box was not seriously misleading. However, the same inquiry notice

16  would have existed in *Pacific Trencher* because (like CNB) the secured lender in that case filed a

17  corrective statement after discovering its mistake. Moreover, the test is not whether someone was

18  put on inquiry notice of the potential existence of a lien, but rather whether "a potential creditor

19  could have been misled." *Pacific Trencher,* 735 F.2d at 364. The Ninth Circuit has held that when

20  the termination box is checked, potential creditors could be mislead, the mistake is "seriously

21  misleading," and the security interest is terminated. Hence, CNB's security interest was terminated

22  by virtue of the filing of the Terminating Amendments (even if a mistake was made).

23  E.  **The Committee Should Have an Opportunity to Conduct**
        **Discovery and Litigate the Validity, Priority or Extent of**
24      **CNB's Asserted Liens Through an Adversary Proceeding**

25      Key facts surrounding the filing of the Terminating Amendments remain unknown. For

26  instance, the Committee does not yet know who checked the termination boxes at issue, what

27  documents were delivered to First American by CNB, what documents First American delivered to

28  the Secretary, and what may have transpired between First American's receipt of the documents for

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

13
OPPOSITION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF CITY
NATIONAL BANK FOR ORDER REQUIRING
DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

Case3:09-cv-03817-MMC Document3-13 Filed: 06/25/09 Entered: 06/25/09 ...
17

1     filing and the date that the Terminating Amendments were filed. The Committee also has not had an

2     opportunity to conduct discovery. Hence, to the extent that the Court is not inclined to deny the

3     Motion outright, the Committee urges the Court to deny the Motion without prejudice pending the

4     filing of an adversary proceeding by the Committee to determine the validity, priority or extent of

5     CNB's liens under Bankruptcy Rule 7001(2).

**V.**

**CONCLUSION**

8     Based on the foregoing, the Court should deny the Motion because the facts known to date

9     indicate that First American, acting within the scope of its authority, filed the Terminating

10    Amendments and such filing was effective in terminating CNB's security interests against the assets

11    of this estate. CNB is therefore nothing more than an unsecured creditor and is not entitled to an

12    immediate distribution of any sale proceeds.

13    Dated:    June 25, 2009            PACHULSKI STANG ZIEHL & JONES LLP

15                        By     */s/ Pamela E. Singer*
                             Pamela E. Singer
16                             Attorneys for the Official Committee of
                            Unsecured Creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

14    OPPOSITION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF CITY NATIONAL BANK FOR ORDER REQUIRING DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL

Case3:09-cv-03817-MMC Doc# 180   Filed: 06/25/09   Entered: 06/25/09

17

1  Maxim B. Litvak (CA Bar No. 215852)
   Pamela E. Singer (CA Bar No. 224758)
2  PACHULSKI STANG ZIEHL & JONES LLP
   150 California Street, 15th Floor
3  San Francisco, California 94111-4500
   Telephone: 415/263-7000
4  Facsimile: 415/263-7010
5  E-mail:mlitvak@pszjlaw.com
        psinger@pszjlaw.com
6
   Attorneys for the Official Committee of Unsecured
7  Creditors
8
9              UNITED STATES BANKRUPTCY COURT
10             NORTHERN DISTRICT OF CALIFORNIA
11                    OAKLAND DIVISION

12  In re:                                    Case No.: 09-41727-EDJ

13  A.F. Evans Company, Inc.,                 Chapter 11

14                          Debtor           **CERTIFICATE OF SERVICE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case:09-41727 Doc# 180-1   Filed: 06/25/09   Entered: 06/25/09 16:34:37   Page 1
                                    of 4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

CERTIFICATE OF SERVICE

1

# PROOF OF SERVICE

2 STATE OF CALIFORNIA )

3 )
COUNTY OF SAN )

4 FRANCISCO

5

6     I, Hung Phan, am employed in the city and county of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is 150 California Street, 15th Floor, San Francisco, California 94111-4500.

7

8     On June 25, 2009, I caused to be served the **OPPOSITION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF CITY NATIONAL BANK FOR ORDER REQUIRING DEBTOR TO REMIT SALE PROCEEDS OF COLLATERAL** in this action by placing a true and correct copy of said document(s) in sealed envelopes addressed as follows:

9

10

*Please see attached Service List*

11

12 ☑ (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

13

14

15

16 ☑ (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address.

17     I declare that I am employed in the office of a member of the bar of this Court at whose direction was made.

18

19     Executed on June 25, 2009, at San Francisco, California.

20                               */s/ Hung Phan*

21                                   Hung Phan

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| **Debtor** | **Counsel to the Debtor** | **Office of the U.S. Trustee/Oak** |
|---|---|---|
| A.F.Evans Company, Inc. | Chris D. Kuhner | Office of the U.S. Trustee |
| Attn: Richard A. Bell | Eric Nyberg | 1301 Clay St. #690N |
| Responsible Individual | Kornfield, Nyberg, Bendes and Kuhner | Oakland, CA 94612 |
| 1000 Broadway, Ste 300 | 1999 Harrison St. #2675 | |
| Oakland, CA 94607 | Oakland, CA 94612 | |
| | *c.kuhner@kornfieldlaw.com* | |
| | *e.nyberg@kornfieldlaw.com* | |
| | **Secured Creditors** | |
| Central Valley Community Bank | City National Bank | CP III Evans LLC |
| Attn: Pat Carmen | Loan Center | 1000 Sansome St. Ste 180 |
| 60 W. 10th Street | PO Box 60938 | San Francisco, CA 94111 |
| Tracy, CA 95376 | Los Angeles, CA 90060-0938 | |
| Cushrex/Byron Park Investors LP | Heritage Bank of Commerce | |
| 1801 Oakland Blvd. #200 | 150 Almaden Blvd. | |
| Walnut Creek, CA 94596 | San Jose, CA 95113 | |
| | **Requests for Special Notice** | |
| **Attorneys for Donald Engle and Engle** | **Attorneys for Central Valley** | **Representative for tw telecom inc.** |
| **Development Services, Inc.** | **Community Bank** | Linda Boyle |
| William E. Adams | Mark V. Isola, Esq. | tw telecom inc. |
| Quin E. Marshall | Rehon & Roberts | 10475 Park Meadows Drive, #400 |
| David C. Lee | 10 Almaden Blvd., Suite 550 | Littleton, CO 80124 |
| Fitzgerald Abbott & Beardsley LLP | San Jose, CA 95113 | |
| 1221 Broadway, 21st Floor | | |
| Oakland, CA 94612 | | |
| *wadams@fablaw.com* | | |
| *qmarshall@fablaw.com* | | |
| *dlee@fablaw.com* | | |
| **Attorneys for Affordable Housing Eastshore** | **State of Washington** | **Attorneys for U.S. Bank National** |
| **Manor I, LLC; MMA Pioneer Plaza, LLC** | Zachary Mosner | **Association** |
| **f/k/a Lend Lease Pioneer Park Plaza, LLC;** | Assistant Attorney General | Randy Rogers |
| **Affordable Housing NORH I Housing, LLC;** | Bankruptcy & Collections Unit | Winston & Strawn LLP |
| **Affordable Housing Oak Center, LLC; and** | 800 Fifth Avenue, Suite 2000 | 101 California Street |
| **Affordable Housing Playa Del Alameda, LLC** | Seattle, WA 98104-3188 | San Francisco, CA 94111-5894 |
| Todd C. Toral | | *rrogers@winston.com* |
| Andrew R. Neilson | | |
| Gina M. Fornario | | |
| Nixon Peabody LLP | | |
| One Embarcadero Center, 18th Floor | | |
| San Francisco, CA 94111-3600 | | |
| *ttoral@nixonpeabody.com* | | |
| *aneilson@nixonpeabody.com* | | |
| *gfornario@nixonpeabody.com* | | |
| **Attorneys for CP III Evans, LLC** | **Attorneys for CP III Evans, LLC** | **Attorneys for MW Housing Partners** |
| Manatt, Phelps & Phillips, LLP | Manatt, Phelps & Phillips, LLP | **III, L.P.** |
| Attn: Alan Feld, Esq. | Attn: Marv Pearlstein, Esq. | Steven G. Polard |
| 11355 West Olympic Boulevard | One Embarcadero Center, 30th Floor | Perkins Coie LLP |
| Los Angeles, CA 90064 | San Francisco, CA 94111 | 1620 26th Street, 6th Floor |
| *afeld@manatt.com* | *mpearlstein@manatt.com* | Santa Monica, CA 90404 |
| | | *spolard@perkinscoie.com* |

| | | |
|---|---|---|
| **MW Housing Partners III, L.P.**<br>Lorrie Scott<br>Senior Vice President & General Counsel<br>Weyerhaeuser Realty Investors<br>1301 5th Avenue, Suite 3100<br>Seattle, WA 98101 | **Attorneys for City National Bank**<br>Frank T. Pepler<br>Pepler Mastromonaco LLP<br>100 First Street, 25th Floor<br>San Francisco, CA 94105 | **Attorneys for Union Bank, N.A.**<br>c/o Robert B. Kaplan, Esq.<br>Jeffer, Mangels, Butler & Marmaro LLP<br>Two Embarcadero Center, 5th Floor<br>San Francisco, CA 94111 |
| **Attorneys for Alliant Tax Credit Fund XVI, Ltd., Alliant Tax Credit XVI, Inc., Alliant Tax Credit Fund XVII, Ltd., and Alliant Tax Credit XVII, Inc.**<br>Margaret M. Mann, Esq.<br>Sheppard Mullin Richter & Hampton LLP<br>501 West Broadway, 19th Floor<br>San Diego, CA 92101-3596 | **Attorneys for Heritage Bank of Commerce**<br>Lillian Stenfeldt, Esq,<br>Sedgwick, Detert, Moran & Arnold LLP<br>One Market Plaza, Steuart Tower, 8th Floor<br>San Francisco, CA 94105<br>*Lillian.stenfeldt@sdma.com*<br>*Robert.gebhard@sdma.com* | **Attorneys for Apex Real Estate Advisors, LLC**<br>Jeffrey A. Krieger<br>Greenberg Glusker Fields Claman & Machtinger LLP<br>1900 Avenue of the Stars, 21st Floor<br>Los Angeles, CA 90067-4590<br>Fax: 310-553-0687<br>*jkrieger@greenbergglusker.com* |
| **Attorneys for Apex Real Estate Advisors, LLC**<br>Arnold E. Brown<br>Apex Real Estate<br>32 Washington Avenue, Suite B<br>Point Richmond, CA 94801<br>*Fax: 510-253-3053*<br>*abrown@apexreadvisors.com* | **Attorneys for Citizens Housing Corporation, Case Avenue Housing corporation, and Promenade Housing Corporation**<br>Citizens Housing Corporation<br>c/o Gregg M. Ficks, Esw.<br>Coblentz, Patch, Duffy & Bass, LLP<br>One Ferry Building, Suite 200<br>San Francisco, CA 94111<br>*gficks@coblentzlaw.com* | **Attorneys for California Mortgage and Realty, Inc.**<br>Jeffery D. Trowbridge<br>Attorney at Law<br>180 Grand Avenue, Suite 1550<br>Oakland, CA 94612<br>*jdt3656@sbcglobal.net* |
| **Attorneys for Segue Construction, Inc.**<br>Diemer, Whitman & Cardosi<br>Kathryn S. Diemer<br>75 E. Santa Clara Street<br>San Jose, CA 95113 | **Segue Construction, Inc.**<br>Steve Grider, President<br>7139 Koll Center Parkway, Suite 200<br>Pleasanton, CA 94516 | **Counsel to Regents of the University of California**<br>Randy Michelson<br>Michelson Law Group<br>150 Spear Street, Suite 1600<br>San Francisco, CA 94105<br>*randy.michelson@michelsonlawgroup.com* |
| **Attorneys for Hudson Housing Capital LLC**<br>Hudson Housing Capital LLC<br>c/o Howard J. Weg<br>Peitzman, Weg & Kempinsky LLP<br>10100 Santa Monica Blvd., Suite 1450<br>Los Angeles, CA 90067<br>*hweg@pwkllp.com* | **Attorneys for CharterMac Corporate Partners XXXIII, L.P., CharterMac Corporate XXXIII SLP LLC, Centerline Corporate Partners XXXII LP, and ChaterMac Corporate XXXII SLP LLC**<br>Robert A. Abrams, Esq.<br>Katsky Korins LLP<br>605 Third Avenue<br>New York, NY 10158-0038 | **Attorney for Federal Home Loan Mortgage Corporation**<br>Alan Ramos, Esq.<br>Nevin, Ramos & Steele<br>700 Ygnacio Valley Road, Suite 300<br>Walnut Creek, CA 94596-3838<br>*aramos@LawNRS.com* |

CERTIFICATE OF SERVICE