IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>    Appellant,<br><br>  v.<br><br>CITY NATIONAL BANK, N.A.,<br><br>    Appellee. | No. C09-03817 MMC<br><br>**ORDER AFFIRMING DECISION OF BANKRUPTCY COURT** |

  Before the Court is appellant Official Committee of Unsecured Creditors' ("Committee") appeal from the bankruptcy court's order of July 9, 2009 and memorandum decision of July 14, 2009 (collectively, "Bankr. Order"), granting City National Bank's ("CNB") motion for an order directing A.F. Evans Company, Inc. ("debtor") to remit to CNB 87.5% of the proceeds from the debtor's sale of its interest in AFE-Pioneer Associates, LP ("AFE-Pioneer"). Having reviewed the briefs filed in connection with the appeal, the Court rules as follows.

## BACKGROUND[1]

  On March 5, 2009, the debtor filed a voluntary Chapter 11 petition. (See Bankr. Order at 4). Nearly all of the debtor's personal property, including a partnership interest in AFE-Pioneer, was encumbered by a security interest held by CNB as security for a

---

  [1] The following facts are derived from the parties' respective Designations of Items to be Included in the Record, and, unless otherwise noted, are undisputed.

revolving line of credit provided by CNB to the debtor, and which interest CNB perfected by filing with the California Secretary of State a financing statement pursuant to California Commercial Code § 9501 ("UCC-1 financing statement").  (See id. at 2.)  On April 9, 2009, as part of the debtor's bankruptcy proceedings, the bankruptcy court entered an order authorizing the debtor to sell its interest in AFE-Pioneer and remit 87.5% of the proceeds from the sale to CNB, and gave the Committee an opportunity to object.  (See id. at 5.)  On May 5, 2009, the Committee objected to the sale, asserting that CNB's entire interest in the debtor's property had been terminated five months earlier, in January 2009, in the course of a prior sale by the debtor of two unrelated entities, Westgate Housing Associates, L.P. ("Westgate") and Greenery Housing Associates, L.P. ("Greenery").  (Id. at 2.)  The events relevant to the Committee's objection are set forth below.

At the time of the January 2009 sale, CNB possessed a security interest in Westgate and Greenery, and, in exchange for a share of the sale proceeds, agreed to amend the UCC-1 financing statement to relinquish its interest in them.  (Id.)  In that regard, to facilitate the release of CNB's interest in Westgate and Greenery, the debtor sent to CNB proposed escrow instructions for the parties' escrow agent, First American Title Insurance Co. ("First American"), along with two proposed financing statements amending CNB's UCC-1 financing statement ("UCC-3 Amendments").  (Id. at 3.)

The proposed escrow instructions directed First American to release CNB's interest in Westgate and Greenery.  (Id.)  The two proposed UCC-3 Amendments deleted CNB's interest in Westgate and Greenery, respectively, from the collateral covered by CNB's UCC-1 financing statement.  (Id.)  Specifically, the UCC-3 Amendments contained a check mark in Box 8, labeled "Amendment (Collateral Change)," as well as a detailed description of the collateral CNB was releasing (see Appellant's Designation of Items to be Included in the Record on Appeal ("A. R.") Ex. 2 ("Litvak Decl.") at Ex. B), one of the proposed UCC-3 Amendments relinquishing CNB's interest in Westgate, and the other relinquishing CNB's interest in Greenery (id.).  Box 2 of each UCC-3 Amendment, labeled "Termination," and which indicates an intent to completely terminate a security interest, was not checked.  (Id.)

Thereafter, on January 8, 2009, CNB vice president Jerry McDermott signed and, through a CNB administrative assistant, submitted to First American the two letters of escrow instruction and the two UCC-3 Amendments. (Bankr. Order at 3; see also A. R. Ex. 3 ("McDermott Decl.") ¶¶ 10-11.)[2]

On January 28, 2009, First American filed the UCC-3 Amendments with the California Secretary of State. (Id.) Box 8, marked "Amendment (Collateral change)," was, as before, checked on both Amendments. (Id. at 4.) Both Amendments, however, now also had a check mark in Box 2. (Id. at 3-4.) Box 2 reads:

> Termination: Effectiveness of the financing statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

(Id. at 4; see also A. R. Ex. 2 at Ex. E.) CNB discovered the error and, on February 6, 2009, filed two additional UCC-3 Amendments, stating CNB had not authorized the termination of its security interest in any assets of the debtor other than Westgate and Greenery. (Bankr. Order at 4.)

Based on the above-described events, the Committee, as noted, objected to the remittance of proceeds from the AFE-Pioneer sale to CNB, arguing that the first two UCC-3 Amendments, filed with Box 2 marked, terminated CNB's entire security interest in all of the debtor's property. (See A. R. Ex. 2.) With its objection, the Committee submitted a declaration, attaching thereto the various versions of the UCC-1 and UCC-3 statements discussed above. (See A.R. Ex. 2 (Litvak Decl.).) Thereafter, on June 12, 2009, CNB filed a motion for an order compelling the debtor to remit to CNB 87.5% of the proceeds pursuant to the parties' earlier agreement, and, in support thereof, submitted a declaration by Jerry McDermott. (See A. R. Ex. 3.) On June 25, 2009, the Committee filed an opposition to the motion, based on its assertion that CNB's security interest had been terminated (see A. R. Ex. 4), and

---

[2] In its July 14, 2009 order, the bankruptcy court found McDermott had caused the UCC-3 Amendments to be submitted "in the exact form proposed by the debtor, without any check mark in box no. 2." (Bankr. Order at 3.)

requested the bankruptcy court hold an evidentiary hearing and also afford the Committee an opportunity to file an adversary proceeding to discover what individual checked Box 2 of the UCC-3 Amendments (see Bankr. Order at 2; A.R. Ex. 4 at 13-14).

On July 2, 2009, the bankruptcy court heard oral argument on CNB's motion and, on July 14, 2009, granted the motion, finding CNB's security interest had not been terminated. (See Bankr. Order at 8.) The Committee thereafter filed a timely notice of appeal.

## STANDARD OF REVIEW

This Court has jurisdiction over the instant appeal under 28 U.S.C. § 158(a). In reviewing a final order of a bankruptcy court, a district court reviews the bankruptcy court's factual findings for clear error and its legal conclusions de novo. See In re Southern Cal. Plastics, Inc., 165 F.3d 1243, 1245 (9th Cir. 1999). "[B]ankruptcy courts have wide discretion in deciding whether to take oral testimony at an evidentiary hearing" or whether to decide a motion on affidavits. In re Nicholson, 435 B.R. 622, 636 (9th Cir. 2010). Similarly, "[d]ecisions regarding continuances and discovery are reviewed for abuse of discretion." In re Khackikyan, 335 B.R. 121, 125 (B.A.P. 9th Cir. 2005); see In re La Sierra Fin. Serv., Inc., 290 B.R. 718, 734 (B.A.P. 9th Cir. 2002) ("A bankruptcy court has wide latitude in controlling discovery.").

## DISCUSSION

The Committee makes four arguments on appeal: (1) the bankruptcy court erred by essentially "grant[ing] summary judgment in favor of CNB" (Appellant's Br. at 7:28-8:1); (2) the bankruptcy court erred by "concluding that CNB's delivery of instructions to First American, as escrow agent, was not 'authorization' to file amendments" terminating CNB's interest in AFE-Pioneer (id. at 10:10-13); (3) the bankruptcy court erred by concluding CNB "was not bound by any mistakes (or modifications) that may have been made by First American" (id. at 12:8-10); (4) the

bankruptcy court erred by concluding the amendments "should be construed as minor errors that were not seriously misleading" (id. at 14:16).  The Court addresses each argument in turn.

**A. Evidentiary Hearing**

At the outset, the Committee contends the bankruptcy court erred by not allowing it additional time for discovery and by not holding an evidentiary hearing to determine who checked Box 2 of the UCC-3 Amendments.

Rule 9017 of the Federal Rules of Bankruptcy Procedure incorporates Rule 43 of the Federal Rules of Civil Procedure, which in turn, provides:  "When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony."  See Fed. R. Civ. P. 43(c).  A bankruptcy court need only provide an evidentiary hearing, however, where "disputed material factual issues" are presented.  See Fed. R. Bankr. P. 9014(d); see also id. Advisory Committee Note (2002) (stating "if the motion cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held").

The Committee argues that the bankruptcy court granted the equivalent of summary judgment despite the presence of a genuine dispute of material fact.  To establish a genuine dispute, a party must "do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (discussing showing necessary to defeat summary judgment under Rule 56 of Federal Rules of Civil Procedure); Fed. R. Bankr. P. 7056 (incorporating Rule 56 of Federal Rules of Civil Procedure); Fed. R. Bankr. P. 9014(c) (applying Rule 7056 of Federal Rules of Bankruptcy Procedure to contested matters).  Once the moving party has shown the absence of a genuine issue of material fact, the opposing party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)

(internal quotation and citation omitted).  Where facts sufficient to oppose a motion are unavailable to the opposing party, it must "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  See Fed. R. Civ. P. 56(d).

Here, as noted, CNB submitted McDermott's declaration, in which he averred that he submitted the UCC-3 Amendments to First American with only Box 8 marked.  (A. R. at Ex. 3.)  The Committee did not object to the declaration nor did it provide any evidence to the contrary.  Nor did it submit an affidavit or declaration showing that, for "specified reasons, it [could not] present facts essential to justify its opposition."  See Fed. R. Civ. P. 56(d); see also In re Lewis, 97 F.3d 1182, 1187 (9th Cir. 1996) (finding opposing party's "conclusory arguments unsupported by factual statements or evidence do not meet [ ] burden" to produce "some significant probative evidence" (internal quotation and citation omitted)).

Consequently, the Committee fails to show the bankruptcy court abused its discretion in deciding the motion on the evidence presented rather than holding an evidentiary hearing.  Further, as set forth below, the Committee fails to show the bankruptcy court abused its discretion in denying a continuance to allow the Committee to engage in discovery.

"In reviewing a denial of a motion to continue, [courts] consider four factors: diligence of the requesting party, usefulness of the continuance, inconvenience to the court and the other side, and prejudice from the denial."  In re La Sierra, 290 B.R. at 734.

Here, the Committee was aware of the relevant facts potentially at issue since at least since May 5, 2009, nearly two months prior to the hearing on CNB's motion, when the Committee filed its initial objection to the proposed AFE-Pioneer sale and distribution.  That objection commenced a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure and opened the door to nearly all the discovery tools offered by the Federal Rules of Civil Procedure.  See Fed. R. Bankr.

1  P. 9014(c) (providing for application of Part VII Bankruptcy Rules, which, in turn,
2  incorporate Rule 26 and Rules 28-37 of Federal Rules of Civil Procedure).  Indeed,
3  even prior to May 5, 2009, the Committee had the right, upon motion and order of
4  the bankruptcy court, to examine CNB and First American regarding the UCC
5  amendments.  See Fed. R. Bankr. P. 2004.  At no point prior to the bankruptcy
6  court's decision, however, did the Committee conduct any discovery with respect to
7  the matter nor did it file an adversary proceeding.  "Denial of a continuance is
8  appropriate where the complaining party does not commence discovery early
9  enough in the proceedings."  See In re La Sierra, 290 B.R. at 734 (upholding denial
10 of continuance  where plaintiff "did not indicate how additional time and investigation
11 would yield the required evidence" and failed to diligently pursue discovery).
12       Moreover, the Committee fails to show how discovery would have assisted it,
13 either as a factual or legal matter, in defeating CNB's motion, nor does it show how it
14 has "suffered actual and substantial prejudice" as a result of the denial of a
15 continuance.  See id.  The only relevant "unknown fact" identified by the Committee
16 was the Committee's speculation that, after McDermott provided the UCC-3
17 Amendments to a CNB administrative assistant with instructions to deliver the
18 materials to First American, the administrative assistant altered the documents.  The
19 Committee neither provided then, nor provides now, any reason why such an
20 employee, assigned a ministerial task, would alter the documents or otherwise
21 intermeddle in their processing.  The Committee's "speculat[ion] that discovery
22 would enable it to demonstrate" grounds for defeating the sale and distribution, see
23 Martel v. Cnty of L.A., 56 F.3d 993, 996 (9th Cir. 1995), is not sufficient, see id..
24       In sum, the bankruptcy court did not abuse its discretion by declining to hold
25 an evidentiary hearing or grant a continuance.
26 **B.  Authorization to Terminate Security Interest**
27       The Committee next argues the bankruptcy court erred in determining that
28 First American was not acting within the scope of its authority when it filed the

7

erroneous UCC-3 amendments.

It is well established that a principal is bound by the acts of an agent acting within the scope of the agent's authority. See Cal. Civ. Code § 2330; Goddard v. Metro. Trust Co. of Cal., 82 F.2d 902, 904 (9th Cir. 1936). The California Commercial Code defines the scope of an agent's authority with respect to the filing of financing statements. In particular, "[a] filed record is effective only to the extent that it was filed by a person that may file it under Section 9509." See Cal. Com. Code § 9510(a). Under § 9509, as relevant hereto, "[a] person may file an amendment other than an amendment that adds collateral covered by a financing statement or an amendment that adds a debtor to a financing statement only if . . . [t]he secured party of record authorizes the filing." See Cal. Com. Code § 9509(d).

Here, the Committee, relying on CNB's instructions to First American, argues CNB gave First American broad authorization to file any "appropriate amendments" to CNB's UCC-1 financing statement and, consequently, that First American was acting as CNB's agent in all matters relating to CNB's security interest in the debtor's property. (Appellant's Br. at 10:25-27.) The language on which the Committee relies, however, when read in context, does not support the Committee's characterization thereof. The phrase "appropriate amendments" is qualified as follows:

> . . . City National Bank hereby releases all of its right, title and interest in [Westgate and Greenery] and authorizes the filing of appropriate amendments to [the] UCC Financing Statement . . .

(See A. R. Ex. 2 at Ex. C.)

The bankruptcy court reasonably construed such instruction to mean that the only "appropriate amendments" authorized by CNB were amendments that relinquished CNB's interest in the two properties identified therein. The filing of a form that would completely terminate CNB's interest in the remainder of the debtor's property was not within the scope of the limited authority CNB granted to First American, and CNB thus was not bound by First American's filing of the UCC-3

Amendments with Box 2 checked.

Accordingly, the Committee fails to show the bankruptcy court committed clear error in finding First American was not acting within the scope of its authority when it filed the UCC-3 Amendments terminating CNB's security interest in all of the debtor's assets.

**C. Mistake/Modification**

The Committee further contends that, even if First American was not expressly authorized to file a UCC amendment terminating CNB's interest in the entirety of the debtor's property, the bankruptcy court erred in not finding CNB was bound by First American's "mistakes" or "modifications." (See Appellant's Br. at 12:8-10.)

An escrow's agency is "a limited agency" and construed "strictly in accordance with the escrow instructions." See Lee v. Title Ins. & Trust Co., 264 Cal. App. 2d 160, 162 (Cal. Ct. App. 1968); see also Montgomery v. Bank of Am. Nat'l Trust and Sav. Ass'n, 85 Cal. App. 2d 559, 563 (Cal. Ct. App. 1948) (holding deed altered after transmission to escrow holder void and party to escrow not bound by alteration). "The law is well established that a delivery by an escrow agent contrary to the terms of a deposit in escrow is void and of no force or effect." Geenzweight v. Title Guarantee & Trust Co., 1 Cal. 2d 577, 581 (1934).

Here, as discussed above, the bankruptcy court reasonably determined First American's authorization as an escrow agent was limited to the filing of amendments relinquishing CNB's interest in Westgate and Greenery only. First American's authority was strictly limited by the instructions CNB provided. See Lee, 264 Cal. App. 2d at 162. The filing of a UCC-3 Amendment altered to terminate CNB's entire security interest is not "a mere violation of the principal's instructions regarding the manner in which [that] authority should be exercised," but, rather, "a complete departure from the agent's authority." Cf. Goddard, 82 F.2d at 904 (finding in suit against agent for conversion, where agent authorized to make loan but "neglect[ed]

1 to take the so-called security," agent still acting within scope of authority and no
2 cause of action stated).

3       Accordingly, the Committee fails to show the bankruptcy court erred in finding
4 CNB was not bound by First American's filings.

5 **D. "Seriously Misleading"**

6       Lastly, the Committee argues the bankruptcy court erred in finding the UCC-3
7 Amendments were not "seriously misleading."

8       The test for whether an error is "seriously misleading" is "whether it would
9 indicate to an interested third party the possible existence of prior encumbrances on
10 the collateral." See In re Munger, 495 F.2d 511, 512 (9th Cir. 1974).  According to
11 the Committee, the UCC-3 Amendments as filed by First American would lead a
12 potential creditor to believe there was no prior encumbrance on AFE-Pioneer, and,
13 consequently, were effective to terminate CNB's interest in AFE-Pioneer.

14       Citing In re Pacific Trencher Equip., Inc., 735 F.2d 362 (9th Cir. 1984), the
15 Committee argues an erroneously checked termination box on an amendment to a
16 financing statement is, as a matter of law, both seriously misleading under the UCC
17 and thus binding on CNB.  In Pacific Trencher, a secured creditor had intended to
18 file a UCC form releasing its interest in certain assets of the debtor, see id. at 363,
19 but instead mistakenly marked the "Termination" box rather than the "Release" box,
20 see id.  The Ninth Circuit found the form at issue therein was seriously misleading
21 and, as such, effectively terminated the secured creditor's interest.  See id. at 364.
22 The Ninth Circuit further found the amendment could not be construed as
23 terminating the secured party's security interest in only those items specifically listed
24 on the form because the form then in use did not provide for a partial termination
25 unless a box labeled "Release" was checked.  See id. at 364-65.

26       Pacific Trencher, however, is distinguishable on its facts.  As the bankruptcy
27 court observed, Pacific Trencher entailed an error made by the secured party itself,
28 not, as here, by an individual or entity lacking authority to file the erroneous

document. The effect of a lack of authorization thus was not before the Pacific Trencher court.[3] Additionally, in Pacific Trencher, as the bankruptcy court further observed, only the "Termination" box was checked, leaving no room for ambiguity. Id. at 365. Consequently, there was nothing in the form to alert potential creditors of the secured party's interest once the termination was filed. In the bankruptcy court's words, there was no "red flag." (See Bankr. Order at 11:2.) Here, by contrast, each of the two UCC-3 Amendments contained, on its face, inconsistent statements. The placing of check marks in both Box 8 and Box 2, as well as the detailed information in the former, constituted discrepancies of sufficient significance to alert potential creditors of a prior encumbrance on the debtor's interest in AFE-Pioneer, particularly where two such Amendments were filed when only one was needed to accomplish a termination of CNB's entire interest. In sum, the UCC-3 Amendments were confusing, but they were not seriously misleading.

Accordingly, the Committee fails to show the bankruptcy court erred in finding the altered filings were not seriously misleading.

**CONCLUSION**

For the reasons stated, the order of the bankruptcy court granting CNB's motion is hereby AFFIRMED.

**IT IS SO ORDERED.**

Dated: May 13, 2011

MAXINE M. CHESNEY
United States District Judge

---

[3] As the bankruptcy court also noted, Pacific Trencher was decided before the 2001 revision of Article IX of the California Commercial Code and the enactment of sections 9509(d) and 9510(a), which provisions altered the law regarding the validity of financing statements from what it was at the time Pacific Trencher was decided. After the revisions, the test for determining the validity of a UCC-3 Amendment is whether it was authorized. See Cal. Civ. Code §§ 9509(d), 9510(a). As discussed above, First American was not authorized to terminate CNB's security interest.

11